E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
SCOTT PAETTY (Cal. Bar No. 274719
ADAM P. SCHLEIFER (Cal. Bar No. 313818)
Assistant United States Attorneys
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6527; 4849
     Facsimile: (213) 894-6269
     E-mail:   scott.paetty@usdoj.gov; adam.schleifer@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED
CLERK, U.S. DISTRICT COURT

12/20/2022

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ CD _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>               v.<br><br>MARC JAY FRANKEL,<br><br>          Defendant. | No. CR  2:22-cr-00599-GW<br><br>PLEA AGREEMENT FOR DEFENDANT<br>MARC JAY FRANKEL |

     1.   This constitutes the plea agreement between defendant MARC

JAY FRANKEL ("defendant") and the United States Attorney's Office for

the Central District of California (the "USAO") in the investigation

of defendant's scheme to defraud clients of the investment-advisory

firm at which defendant was an investment advisor representative.

This agreement is limited to the USAO and cannot bind any other

federal, state, local, or foreign prosecuting, enforcement,

administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2. Defendant agrees to:

a. Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to a one-count information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with Wire Fraud in violation of 18 U.S.C. § 1343.

b. Not contest facts agreed to in this agreement.

c. Abide by all agreements regarding sentencing contained in this agreement.

d. Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e. Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f. Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g. Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h. Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial

1    Litigation Section at 300 North Los Angeles Street, Suite 7516, Los

2    Angeles, CA 90012.  Defendant agrees that defendant's ability to pay

3    criminal debt shall be assessed based on the completed Financial

4    Disclosure Statement and all required supporting documents, as well

5    as other relevant information relating to ability to pay.

6          i.   Authorize the USAO to obtain a credit report upon

7    returning a signed copy of this plea agreement.

8          j.   Consent to the USAO inspecting and copying all of

9    defendant's financial documents and financial information held by the

10   United States Probation and Pretrial Services Office.

<u>THE USAO'S OBLIGATIONS</u>

12   3.   The USAO agrees to:

13         a.   Not contest facts agreed to in this agreement.

14         b.   Abide by all agreements regarding sentencing contained

15   in this agreement.

16         c.   At the time of sentencing, provided that defendant

17   demonstrates an acceptance of responsibility for the offense up to

18   and including the time of sentencing, recommend a two-level reduction

19   in the applicable Sentencing Guidelines offense level, pursuant to

20   U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

21   additional one-level reduction if available under that section.

22         d.   Except for criminal tax violations (including

23   conspiracy to commit such violations chargeable under 18 U.S.C.

24   § 371), not further criminally prosecute defendant for violations of

25   18 U.S.C. §§ 1028A, 1343 arising out of defendant's conduct described

26   in the agreed-to factual basis set forth in Paragraph 10 below.

27   Defendant understands that the USAO is free to criminally prosecute

28   defendant for any other unlawful past conduct or any unlawful conduct

1   that occurs after the date of this agreement.  Defendant agrees that
2   at the time of sentencing the Court may consider the uncharged
3   conduct in determining the applicable Sentencing Guidelines range,
4   the propriety and extent of any departure from that range, and the
5   sentence to be imposed after consideration of the Sentencing
6   Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

7                        NATURE OF THE OFFENSE

8        4.   Defendant understands that for defendant to be guilty of
9   the crime charged in in the Information, that is, Wire Fraud in
10  violation of Title 18, United States Code, Section 1343, the
11  following must be true:

12            a.   Defendant knowingly devised or participated in a
13  scheme or plan to defraud, or a scheme or plan for obtaining money or
14  property by means of false or fraudulent pretenses, representations,
15  promises, or the concealment of material facts;

16            b.   The statements made as part of the scheme were
17  material.  That is, they had a natural tendency to influence, or were
18  capable of influencing, a person to part with money or property;

19            c.   Defendant acted with the intent to defraud, i.e., with
20  the intent to deceive and cheat; and

21            d.   Defendant used, or caused to be used, an interstate
22  wire communication to carry out or attempt to carry out an essential
23  part of the scheme.

24               PENALTIES AND RESTITUTION

25       5.   Defendant understands that the statutory maximum sentence
26  that the Court can impose for a violation of Title 18, United States
27  Code, Section 1343, as charged in the Information is: 20 years of
28  imprisonment; a 3-year period of supervised release; a fine of

                                4

$250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

6.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

7.   Defendant understands that defendant will be required to pay full restitution to the victims of the fraudulent scheme and offense to which defendant is pleading guilty.  Defendant agrees that, in return for the United States's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty; and (b) any count dismissed and charge not prosecuted pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts.  The parties currently believe that the applicable amount of restitution is

approximately $743,817.58, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

8.    Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

9.    Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an

absolute certainty the effect of his conviction on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

<u>FACTUAL BASIS</u>

10.  Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 12 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

Defendant worked as an Investment Advisor Representative ("IAR") for an investment-advisory firm (the "Investment Firm") whose principal place of business was Santa Barbara, California.  The Investment Firm was a registered investment advisor with the Securities and Exchange Commission and as an IAR affiliated with the Investment Firm, defendant owed fiduciary duties to the Investment Firm's clients, including the duties of loyalty and good faith.

Pursuant to the agreements signed by Investment Firm clients, defendant made investment decisions for those clients, and bought and sold securities on their behalf.  As part of those written agreements and in the course of dealing with his clients, defendant represented to Investment Firm clients that he was a loyal IAR and fiduciary who would act in his clients' best interests and not put his own interests above theirs.

These representations were important because, for his Investment Firm clients with discretionary accounts, including Advisory Client 1 and Advisory Client 2, defendant was able to execute transactions without the need to seek prior, transaction-specific approval.  And defendant knew that his clients trusted and relied upon his loyalty. For example, Advisory Client 1 was a professional athlete, and advised defendant that he relied upon defendant to manage his wealth so that he, Advisory Client 1, could focus exclusively on his professional sports career.

Beginning in or around December 2017 and continuing through in or around June 2020, defendant, without authorization and in violation of the fiduciary duties he owed and representations he had made, began to convert funds within Advisory Client 1's checking account for his own unauthorized personal use and benefit. Specifically, defendant charged jewelry, Lakers tickets, electronics, and his children's college tuition on an American Express credit card in the name of his deceased mother, and then paid the resulting debts by initiating interstate wire transfers through the Automated Clearing House network ("ACH payments") from Advisory Client 1's checking account to American Express.

As one example of defendant's use of the interstate wires to execute his fraudulent scheme, on January 9, 2020, defendant initiated an ACH transaction from Advisory Client 1's account to American Express in the amount of $3,034.92.  This electronic funds transaction, which travelled in interstate commerce, was typical of defendant's method of structuring unauthorized transactions from Advisory Client 1's account into ACH payments ranging between

approximately $2,000 and $4,000 in order to avoid the scrutiny that larger payment amounts might draw.

When defendant learned, in or around May 2020, that representatives from Advisory Client 1's sports agency were investigating potential irregularities involving Advisory Client 1's accounts, defendant misrepresented to that agency that he had reviewed Advisory Client 1's accounts and found no irregularities. In or around June 2020, when representatives from Advisory Client 1's sports agency confronted defendant with evidence of the improper ACH payments, defendant falsely blamed Advisory Client 1's personal assistant.

After the apparent discovery of his fraud against Advisory Client 1, and to further conceal and continue his scheme, in or around June 2020, defendant ceased initiating ACH payments from Advisory Client 1's account and, instead, initiated two additional unauthorized ACH payments from Advisory Client 2's checking account to satisfy approximately $4,765.58 in additional debts defendant had incurred through the use of his deceased mother's American Express credit card.

Through his scheme to defraud, defendant caused losses totaling approximately $743,817.58.

<u>SENTENCING FACTORS</u>

11.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have

any expectation of receiving a sentence within the calculated
Sentencing Guidelines range, and that after considering the
Sentencing Guidelines and the other § 3553(a) factors, the Court will
be free to exercise its discretion to impose any sentence it finds
appropriate up to the maximum set by statute for the crimes of
conviction.

12.   Defendant and the USAO agree to the following applicable
Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) |
| Specific Offense Characteristics: | | |
| Loss Amount | +14 | U.S.S.G. § 2B1.1(b)(1)(H) |
| Fraud by Investment Advisor | +4 | U.S.S.G. §2B1.1(b)(20) ___ |

Defendant and the USAO reserve the right to argue that additional
specific offense characteristics, adjustments, and departures under
the Sentencing Guidelines are appropriate.

13.   Defendant understands that there is no agreement as to
defendant's criminal history or criminal history category.

14.   Defendant and the USAO reserve the right to argue for a
sentence outside the sentencing range established by the Sentencing
Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1),
(a)(2), (a)(3), (a)(6), and (a)(7).

## WAIVER OF CONSTITUTIONAL RIGHTS

15.   Defendant understands that by pleading guilty, defendant
gives up the following rights:

     a.   The right to persist in a plea of not guilty.

     b.   The right to a speedy and public trial by jury.

c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.   The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

16.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that

the statement of facts provided herein is insufficient to support
defendant's plea of guilty.

### LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

17.  Defendant agrees that, provided the Court imposes a total
term of imprisonment within or below the range corresponding to an
offense level of 24 and the criminal history category calculated by
the Court, defendant gives up the right to appeal all of the
following: (a) the procedures and calculations used to determine and
impose any portion of the sentence; (b) the term of imprisonment
imposed by the Court; (c) the fine imposed by the Court, provided it
is within the statutory maximum; (d) to the extent permitted by law,
the constitutionality or legality of defendant's sentence, provided
it is within the statutory maximum; (e) the amount and terms of any
restitution order, provided it requires payment of no more than
$1,000,000; (f) the term of probation or supervised release imposed
by the Court, provided it is within the statutory maximum; and
(g) any of the following conditions of probation or supervised
release imposed by the Court: the conditions set forth in Second
Amended General Order 20-04 of this Court; the drug testing
conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the
alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

18.  Defendant also gives up any right to bring a post-
conviction collateral attack on the conviction or sentence, including
any order of restitution, except a post-conviction collateral attack
based on a claim of ineffective assistance of counsel, a claim of
newly discovered evidence, or an explicitly retroactive change in the
applicable Sentencing Guidelines, sentencing statutes, or statutes of
conviction.  Defendant understands that this waiver includes, but is

not limited to, arguments that the statute to which defendant is
pleading guilty is unconstitutional, and any and all claims that the
statement of facts provided herein is insufficient to support
defendant's plea of guilty.

19. The USAO agrees that, provided (a) all portions of the
sentence are at or below the statutory maximum specified above and
(b) the Court imposes a term of imprisonment within or above the
range corresponding to an offense level of 22 and the criminal
history category calculated by the Court, the USAO gives up its right
to appeal any portion of the sentence, with the exception that the
USAO reserves the right to appeal the amount of restitution ordered
if that amount is less than $743,817.58.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

20. Defendant agrees that if, after entering a guilty plea
pursuant to this agreement, defendant seeks to withdraw and succeeds
in withdrawing defendant's guilty plea on any basis other than a
claim and finding that entry into this plea agreement was
involuntary, then (a) the USAO will be relieved of all of its
obligations under this agreement; and (b) should the USAO choose to
pursue any charge that was either dismissed or not filed as a result
of this agreement, then (i) any applicable statute of limitations
will be tolled between the date of defendant's signing of this
agreement and the filing commencing any such action; and
(ii) defendant waives and gives up all defenses based on the statute
of limitations, any claim of pre-indictment delay, or any speedy
trial claim with respect to any such action, except to the extent
that such defenses existed as of the date of defendant's signing this
agreement.

1

EFFECTIVE DATE OF AGREEMENT

2   21.  This agreement is effective upon signature and execution of

3   all required certifications by defendant, defendant's counsel, and an

4   Assistant United States Attorney.

5

BREACH OF AGREEMENT

6   22.  Defendant agrees that if defendant, at any time after the

7   effective date of this agreement, knowingly violates or fails to

8   perform any of defendant's obligations under this agreement ("a

9   breach"), the USAO may declare this agreement breached.  All of

10  defendant's obligations are material, a single breach of this

11  agreement is sufficient for the USAO to declare a breach, and

12  defendant shall not be deemed to have cured a breach without the

13  express agreement of the USAO in writing.  If the USAO declares this

14  agreement breached, and the Court finds such a breach to have

15  occurred, then: (a) if defendant has previously entered a guilty plea

16  pursuant to this agreement, defendant will not be able to withdraw

17  the guilty plea, and (b) the USAO will be relieved of all its

18  obligations under this agreement.

19  23.  Following the Court's finding of a knowing breach of this

20  agreement by defendant, should the USAO choose to pursue any charge

21  that was either dismissed or not filed as a result of this agreement,

22  then:

23  a.  Defendant agrees that any applicable statute of

24  limitations is tolled between the date of defendant's signing of this

25  agreement and the filing commencing any such action.

26  b.  Defendant waives and gives up all defenses based on

27  the statute of limitations, any claim of pre-indictment delay, or any

28  speedy trial claim with respect to any such action, except to the

14

extent that such defenses existed as of the date of defendant's signing this agreement.

c.   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

24.   Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

25.   Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to

maintain its view that the calculations in paragraph 12 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

26.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

27.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

1      <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

2          28.   The parties agree that this agreement will be considered

3   part of the record of defendant's guilty plea hearing as if the

4   entire agreement had been read into the record of the proceeding.

5   AGREED AND ACCEPTED

6   UNITED STATES ATTORNEY'S OFFICE
    FOR THE CENTRAL DISTRICT OF
7   CALIFORNIA

8   E. MARTIN ESTRADA
    United States Attorney

9
        *APS*                                    December 16, 2022
10  _____        _____
    SCOTT PAETTY                    Date
11  ADAM P. SCHLEIFER
    Assistant United States Attorneys
12

13  _____        _____
    MARC JAY FRANKEL                Date
14  Defendant

15  _____        _____
    FREDERIC J. WARNER              Date
16  Attorney for Defendant MARC FRANKEL

17

18              <u>CERTIFICATION OF DEFENDANT</u>

19      I have read this agreement in its entirety.  I have had enough

20  time to review and consider this agreement, and I have carefully and

21  thoroughly discussed every part of it with my attorney.  I understand

22  the terms of this agreement, and I voluntarily agree to those terms.

23  I have discussed the evidence with my attorney, and my attorney has

24  advised me of my rights, of possible pretrial motions that might be

25  filed, of possible defenses that might be asserted either prior to or

26  at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

27  of relevant Sentencing Guidelines provisions, and of the consequences

28  of entering into this agreement.  No promises, inducements, or

                              17

representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____    _____
MARC JAY FRANKEL                                      Date
Defendant

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am MARC JAY FRANKEL's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____    _____
FREDERIC J. WARNER                                   Date
Attorney for Defendant MARC FRANKEL

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

28.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

E. MARTIN ESTRADA
United States Attorney

| | |
|---|---|
| SCOTT PAETTY | Date |
| ADAM P. SCHLEIFER | |
| Assistant United States Attorneys | |
| | 12/12/22 |
| MARC JAY FRANKEL | Date |
| Defendant | |
| | 12/12/22 |
| FREDERIC J. WARNER | Date |
| Attorney for Defendant MARC FRANKEL | |

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or

1   representations of any kind have been made to me other than those
2   contained in this agreement.   No one has threatened or forced me in
3   any way to enter into this agreement.   I am satisfied with the
4   representation of my attorney in this matter, and I am pleading
5   guilty because I am guilty of the charge and wish to take advantage
6   of the promises set forth in this agreement, and not for any other
7   reason.

8   _____          12/12/22
9   MARC JAY FRANKEL                              Date
    Defendant
10

11                  CERTIFICATION OF DEFENDANT'S ATTORNEY

12       I am MARC JAY FRANKEL's attorney.   I have carefully and
13   thoroughly discussed every part of this agreement with my client.
14   Further, I have fully advised my client of his rights, of possible
15   pretrial motions that might be filed, of possible defenses that might
16   be asserted either prior to or at trial, of the sentencing factors
17   set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines
18   provisions, and of the consequences of entering into this agreement.
19   To my knowledge: no promises, inducements, or representations of any
20   kind have been made to my client other than those contained in this
21   agreement; no one has threatened or forced my client in any way to
22   enter into this agreement; my client's decision to enter into this
23   agreement is an informed and voluntary one; and the factual basis set
24   forth in this agreement is sufficient to support my client's entry of
25   a guilty plea pursuant to this agreement.

26
27   _____          12/12/22
     FREDERIC J. WARNER                           Date
28   Attorney for Defendant MARC FRANKEL

                                    18

**EXHIBIT A**

1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                      FOR THE CENTRAL DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,          CR No.

11            Plaintiff,                I N F O R M A T I O N

12            v.                        [18 U.S.C. § 1343: Wire Fraud;
                                        18 U.S.C. § 981(a)(1)(C) and 28
13   MARC JAY FRANKEL,                  U.S.C. § 2461(c): Criminal
                                        Forfeiture]
14            Defendant.

15

16        The United States Attorney charges:

17                          [18 U.S.C. § 1343]

18   A.   INTRODUCTORY ALLEGATIONS

19        At times relevant to this Information:

20        1.   Defendant MARC JAY FRANKEL was a resident of Tarzana,

21   California, and worked out of an office in Encino, California.

22        2.   Defendant FRANKEL worked as an Investment Advisor

23   Representative ("IAR") for a Santa Barbara-based investment-advisory

24   firm (the "Investment Firm").

25        3.   The Investment Firm was a registered investment advisor

26   with the Securities and Exchange Commission, and as an IAR affiliated

27   with the Investment Firm, defendant FRANKEL owed fiduciary duties to

28

the Investment Firm's clients, including the duties of loyalty and good faith.

4.   For his Investment Firm clients with discretionary accounts, defendant FRANKEL was able to execute transactions without the need to seek prior, transaction-specific approval.

5.   Advisory Client 1 held multiple accounts with the Investment Firm, including discretionary brokerage accounts and an associated checking account ending in 4084 (the "4084 account") used to fund personal expenses for Advisory Client 1 and the expenses of related corporate entities for and of which he was a managing member and partner.

6.   Defendant FRANKEL had access to and discretionary authority over Advisory Client 1's accounts, including the 4084 account.

7.   Advisory Client 1 was a professional athlete, and advised FRANKEL that he relied upon defendant FRANKEL to manage his wealth so that he, Advisory Client 1, could focus exclusively on his professional sports career.

8.   Defendant FRANKEL also had access to and control over banking accounts held by Advisory Client 2 at the Investment Firm.

9.   As part of their agreements to permit defendant FRANKEL discretionary access to their investment accounts, Investment Firm clients, including Advisory Client 1 and Advisory Client 2, trusted and relied upon defendant FRANKEL to manage their assets in their best interests and according to the financial objectives they authorized the Investment Firm and defendant FRANKEL to pursue.

B.   THE SCHEME TO DEFRAUD

10.   Beginning in or around December 2017 and continuing through in or around June 2020, in Los Angeles and Santa Barbara Counties,

within the Central District of California, and elsewhere, defendant
FRANKEL, knowingly and with intent to defraud, devised, participated
in, and executed a scheme to defraud Advisory Client 1 and Advisory
Client 2, as to material matters, and to obtain money and property
from them by means of materially false and fraudulent pretenses,
representations, promises, and the concealment of material facts.

11. The scheme to defraud operated, in substance, as follows:

a. Pursuant to the agreements signed by Advisory Client 1
and Advisory Client 2, defendant FRANKEL made investment decisions
for those clients, and bought and sold securities on their behalf.

b. Defendant FRANKEL represented to Advisory Client 1 and
Advisory Client 2 that he was a loyal IAR and fiduciary who would act
in his clients' best interests and not put his own interests above
theirs.

c. Beginning in or around December 2017 and continuing
through in or around June 2020, defendant FRANKEL, without
authorization and in violation of the fiduciary duties he owed and
representations he had made, began to convert funds within Advisory
Client 1's checking account for defendant FRANKEL's own unauthorized
personal use and benefit.

d. Defendant FRANKEL charged jewelry, Lakers tickets,
travel expenses, electronics, and his children's tuition on an
American Express credit card in the name of his deceased mother, and
then paid the resulting debts by initiating electronic funds
transfers through the Automated Clearing House network ("ACH
payments") from the 4084 account to American Express.

e. Knowingly and with the intent to deceive and cheat his
clients, and in order to conceal his fraudulent scheme from them,

3

1  defendant FRANKEL divided what would have been larger ACH payments

2  into smaller ACH payments ranging between approximately $2,000 and

3  $4,000, in order to avoid the scrutiny that larger payment amounts

4  might draw from Advisory Client 1 and his family members and other

5  advisors.

6          f.   In total, defendant FRANKEL made approximately 241

7  separate unauthorized transfers from the 4084 account totaling

8  approximately $739,052.

9          g.   In order to further conceal his fraudulent scheme:

10              i.   when defendant FRANKEL learned, in or around May

11  2020, that representatives from Advisory Client 1's sports agency

12  were investigating potential irregularities involving Advisory Client

13  1's accounts, defendant FRANKEL misrepresented to that agency that he

14  had reviewed Advisory Client 1's accounts and found no

15  irregularities.

16              ii.   In or around June 2020, when representatives from

17  Advisory Client 1's sports agency confronted defendant FRANKEL with

18  evidence of the improper ACH payments, defendant FRANKEL falsely

19  blamed Advisory Client 1's personal assistant.

20          h.   After the apparent discovery of his fraud against

21  Advisory Client 1, in or around June 2020, defendant FRANKEL ceased

22  initiating ACH payments from Advisory Client 1's account and,

23  instead, initiated two additional unauthorized ACH payments from

24  Advisory Client 2's checking account to satisfy approximately

25  $4,765.58 in additional debts defendant FRANKEL had incurred through

26  the use of his deceased mother's American Express credit card.

27

28

                                    4

i.    Through his scheme to defraud Advisory Client 1 and Advisory Client 2, defendant FRANKEL caused losses totaling approximately $743,817.58.

C.    USE OF INTERSTATE WIRES

12.   On or about January 9, 2020, in Los Angeles and Santa Barbara Counties, within the Central District of California, and elsewhere, defendant FRANKEL, for the purpose of executing the above-described scheme to defraud, caused the transmission of an item by means of wire communication in interstate commerce, namely, an ACH payment of approximately $3,034.92 from the 4084 account to American Express.

1

FORFEITURE ALLEGATION

2

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

3   1.   Pursuant to Rule 32.2 of the Federal Rules of Criminal

4   Procedure, notice is hereby given that the United States of America

5   will seek forfeiture as part of any sentence, pursuant to Title 18,

6   United States Code, Section 981(a)(1)(C) and Title 28, United States

7   Code, Section 2461(c), in the event of the defendant's conviction of

8   the offense set forth in Count One of this Information.

9   2.   The defendant, if so convicted, shall forfeit to the United

10   States of America the following:

11   (a)   All right, title, and interest in any and all

12   property, real or personal, constituting, or derived from, any

13   proceeds traceable to the offense; and

14   (b)   To the extent such property is not available for

15   forfeiture, a sum of money equal to the total value of the property

16   described in subparagraph (a).

17   3.   Pursuant to Title 21, United States Code, Section 853(p),

18   as incorporated by Title 28, United States Code, Section 2461(c), the

19   defendant, if so convicted, shall forfeit substitute property, up to

20   the value of the property described in the preceding paragraph if, as

21   the result of any act or omission of the defendant, the property

22   described in the preceding paragraph or any portion thereof

23   (a) cannot be located upon the exercise of due diligence; (b) has

24   been transferred, sold to, or deposited with a third party; (c) has

25   been placed beyond the jurisdiction of the court; (d) has been

26

27

28

6

1  substantially diminished in value; or (e) has been commingled with

2  other property that cannot be divided without difficulty.

E. MARTIN ESTRADA
United States Attorney


SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

RANEE A. KATZENSTEIN
Assistant United States Attorney
Chief, Major Frauds Section

SCOTT PAETTY
Assistant United States Attorney
Deputy Chief, Major Frauds Section

ADAM P. SCHLEIFER
Assistant United States Attorney
Major Frauds Section

7